2023-2008

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

## In re: ALEXANDER I. SOTO, WALTER G. SOTO,
## Appellants

---

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board Application No. 17/138,794

---

## APPELLANTS' REPLY BRIEF

---

Derek Meeker
LAURENCE & PHILLIPS IP LAW
1050 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
202-558-6968

Kevin B. Laurence
LAURENCE & PHILLIPS IP LAW
1050 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
703-448-8787

Matthew C. Phillips
LAURENCE & PHILLIPS IP LAW
1050 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
503-964-1129

*Counsel for Appellants*

February 13, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2023-2008

**Short Case Caption** In re: Soto

**Filing Party/Entity** Alexander I. Soto and Walter G. Soto

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/13/2024

Signature: /s/ Derek Meeker

Name: Derek Meeker

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Alexander Ivan Soto | NextGen Innovations, LLC (for Alexander I. Soto and Walter G. Soto) | |
| Walter Glenn Soto | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................i

TABLE OF CONTENTS.................................................... iv

TABLE OF AUTHORITIES ................................... vi

I.    INTRODUCTION................................................1

II.   ARGUMENTS IN REPLY ......................................2

      A.    Substantial Evidence Does Not Support the Office's
            Formulation of the Rationale to Combine the Teachings of
            Husbands and Yuki. ..............................................2

            1.    The Supporting Evidence is Not Substantial. ...........2

            2.    Contrary Evidence Undermines the Rationale. ......4

                  a.    The Combination Would Require a Substantial
                        Reconstruction and Change the Principles of
                        Operation of Husbands.....................................5

                  b.    The Combination Would Render Husbands
                        Inoperable for its Intended Purpose............................7

            3.    This is Not a Case About Bodily Incorporation. .....9

            4.    The Cases Cited by the Office are Distinguishable.................10

            5.    The Office's Attempt to Create a New "Not
                  Commensurate With the Claims" Doctrine Should be
                  Rejected. ...................................................19

            6.    Relevant Technical Details are Found in the Claim
                  Language. ...................................................26

B.    The Board's Full Rationale Lacks Evidentiary Support and is Riddled With Errors ................................................................... 28

    1.    Yuki's Disclosure is Not for a LAN. ........................................ 28

    2.    The Board Bungled its Analysis of CSMA/CD in the References. ............................................................................... 30

III.    CONCLUSION ............................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*3Shape Med. A/S v. Sirona Dental Sys. GmbH*,
    IPR2016-00481, Paper 40 (PTAB June 21, 2017) .........................................8

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
    825 F.3d 1373 (Fed. Cir. 2016) ............................................................. 12, 15

*Applications in Internet Time, LLC v. RPX Corp.*,
    897 F.3d 1336 (Fed. Cir. 2018) ........................................................3

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) ........................................................3

*Axonics, Inc. v. Medtronics, Inc.*,
    73 F.4th 950 (Fed. Cir. 2023) ........................................................ 22, 23, 25

*In re Chevalier*,
    500 F. App'x 932 (Fed. Cir. 2013) (nonprecedential) .................................18

*ClassCo, Inc. v. Apple, Inc.*,
    838 F.3d 1214 (Fed. Cir. 2016) ............................................................. 12, 13

*Elbrus Int'l Ltd. v. Samsung Elecs. Co.*,
    738 F. App'x 694 (Fed. Cir. 2018) (nonprecedential) .................................17

*In re Enhanced Sec. Rsch., LLC*,
    739 F.3d 1347 (Fed. Cir. 2014) ........................................................19

*In re Etter*,
    756 F.2d 852 (Fed. Cir. 1985) (en banc) ................................................. 3, 10

*In re Fritch*,
    972 F.2d 1260, (Fed. Cir. 1992) ........................................................7

*Gen'l Plastic Indus. Co. v. Canon Inc.*,
    IPR2015-01954, Paper 9 (PTAB Mar. 9, 2016) ............................................8

*In re Gordon*,
    733 F.2d 900 (Fed. Cir. 1984) ................................................................ passim

*Intel Corp. v. PACT XPP Schweiz AG*,
    No. 2022-1038, 2023 WL 2198649 (Fed. Cir. 2023) (nonprecedential) ...16, 17

*Intuitive Surgical, Inc. v. Ethicon Endo-Surgery, Inc.*,
    IPR2018-00938, Paper 8 (PTAB Dec. 4, 2018) .............................................6

*In re Keller*,
    642 F.2d 413 (CCPA 1981) ................................................................. 12, 14

*Keurig Green Mt., Inc. v. Touch Coffee & Beverages, LLC*,
    IPR2016-01395, Paper 18 (PTAB Jan. 4, 2017) ...........................................8

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) .......................................................................... 13, 21

*MasterImage 3D, Inc. v. RealD Inc.*,
    IPR2015-00036 (PTAB Apr. 22, 2015) ........................................................8

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339 (Fed. Cir. 2001) ...................................................................7

*Medichem, S.A. v. Rolabo, S.L.*,
    437 F.3d 1157 (Fed. Cir. 2006) .................................................................19

*Meiresonne v. Google, Inc.*,
    849 F.3d 1379 (Fed. Cir. 2017) ...................................................................7

*Microsoft Corp. v. Koninklijke Philips N.V.*,
    IPR2018-00185, Paper 7 (PTAB May 22, 2018) ..........................................6

*In re Mouttet*,
    686 F.3d 1322 (Fed. Cir. 2012) .................................................................12

*Netflix Inc. v. DivX, LLC*,
    IPR2020-00052, Paper 82 (PTAB Apr. 22, 2021) ........................................6

*Norman Int'l, Inc. v. Hunter Douglas Inc.*,
　　IPR2014-00276, Paper 11 (PTAB June 20, 2014) .......................................8

*Orthopedic Equipment Co., Inc. v. United States*,
　　702 F. 2d 1005 (Fed. Cir. 1983) .....................................................................11

*Pfizer, Inc. v. Apotex, Inc.*,
　　480 F.3d 1348 (Fed. Cir. 2007) .....................................................................25

*Plas-Pak Indus., Inc. v. Sulzer Mixpac AG*,
　　600 F. App'x 755 (Fed. Cir. 2015) ................................................................5

*In re Ratti*,
　　270 F.2d 810 (CCPA 1959) .................................................................. passim

*R.J. Reynolds Vapor Co. v. Fontem Holdings 1 B.V.*,
　　IPR2018-00630, Paper 9 (PTAB Aug. 29, 2018) .........................................6

*ReShape Med. LLC v. Fufillium, Inc.*,
　　IPR2018-00958, Paper 26 (PTAB Nov. 6, 2018) .........................................6

*Samsung Elecs. Co. v. Mojo Mobility Inc.*,
　　IPR2023-01091, Paper 11 (PTAB Jan. 8, 2024) ..........................................6

*In re Sneed*,
　　710 F.2d 1544 (Fed. Cir. 1983) .....................................................................16

*St. Jude Med., LLC v. Snyders Heart Valve LLC*,
　　977 F.3d 1232 (Fed. Cir. 2020) ......................................................................3

*Tri-Arc LLC v. Safe Rack LLC*,
　　IPR2020-01566, Paper 12 (PTAB Mar. 25, 2021) ......................................8

*Trivascular, Inc. v. Samuels*,
　　812 F.3d 1056 (Fed. Cir. 2016) ......................................................................8

*Victoria's Secret Stores LLC v. Andra Group, LP*,
　　IPR2020-00853, Paper 12 (PTAB Oct. 22, 2020).......................................8

*In re Urbanski,*
    809 F.3d 1237 (Fed. Cir. 2016) ............................................................ 25, 26

*Wangs Alliance Corp. v. Koninklijke Philips N.V.,*
    IPR2015-01290, Paper 63 (PTAB Nov. 23, 2016) ........................................9

## Other Authorities

MPEP § 2143.01 ............................................................................................6, 9

# I.   INTRODUCTION

The Office defends the Board's decision by urging that there is a motivation supporting the Board's modification of Husbands in view of Yuki and that there is substantial evidence supporting that motivation.   Yet the Office fails to overcome the facts that the proposed modification would (a) require a substantial reconstruction of Husbands and change the principles of operation of Husbands and (b) render Husbands inoperable for its intended purpose.   Those two facts undermine the motivation of any substantial-evidentiary support.   The Office, like the Board below, sidesteps those two facts by mischaracterizing the motivation issue as merely concerning bodily incorporation of Husbands and Yuki.   That is not so.   The Office also wrongly defends the Board's sidesteps based on a mistaken view that the claims in this case can excuse the fundamental technical problems that the proposed Husbands-Yuki combination would entail.

This case turns on *In re Ratti*, 270 F.2d 810 (CCPA 1959) and *In re Gordon*, 733 F.2d 900 (Fed. Cir. 1984), cases often credited for establishing the principles (a) and (b) above – principles that should now be reiterated by this Court.   This case is not about bodily incorporation of references.   Nor is this a case of such

broad claim language that the proposed combination of Husbands and Yuki can be salvaged in some way that does not run afoul of those principles. The motivation to combine the teachings of Husbands and Yuki in this case is deficient, and the Board's decision finding the claims obvious should be reversed.

## II.    ARGUMENTS IN REPLY

### A.    Substantial Evidence Does Not Support the Office's Formulation of the Rationale to Combine the Teachings of Husbands and Yuki.

#### 1.    The Supporting Evidence is Not Substantial.

The Office defends the Board's decision by noting that the Board did articulate a motivation to modify Husbands in view of Yuki. *See* Appellee Br. at 11-12, 13, 16. Specifically, the Board said that one skilled in the art would have been motivated to apply Yuki's bandwidth-allocation protocols in Husbands because doing so would have increased throughput, reduced latency, and relaxed buffering requirements. *See* Appx0011, Appx0016. While Yuki does mention those benefits in the context of Yuki's network architecture (a point-to-multipoint, master-slave network), *see e.g.*, Appx3816, there is no evidence anywhere in the record that those benefits would have motivated one skilled in the art to change the access protocol used in Husbands's network, which unlike

Yuki's, is a peer-to-peer network with no central controller in which each terminal is free to initiate direct communication with any other terminal. That is the first deficiency in the Board's motivation reasoning.

Moreover, there is contrary motivation evidence that the Board either misunderstood or failed to consider. Such evidence must be taken into account on appeal. *See Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1356 (Fed. Cir. 2018) ("substantial evidence review requires an examination of the record as a whole, taking into account both the evidence that justifies and detracts from an agency's opinion."); *see also St. Jude Med., LLC v. Snyders Heart Valve LLC*, 977 F.3d 1232, 1238 (Fed. Cir. 2020) (same); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1363 (Fed. Cir. 2017) ("Evidence suggesting reasons to combine cannot be viewed in a vacuum apart from evidence suggesting reasons not to combine.").

This is especially true for obviousness, which, as the Office points out, must take into account "the teachings of the prior art as a whole." Appellee Br. at 18 (*citing In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985) (en banc)). In this case, there is evidence that the Board's proposed combination of Husbands and Yuki

would (a) require a substantial reconstruction of Husbands and change the principles of operation of Husbands and (b) render Husbands inoperable for its intended purpose, as explained below.

## 2. Contrary Evidence Undermines the Rationale.

Yuki purports to improve CSMA/CD in terms of buffer requirements, latency times, and throughput by employing a bandwidth-allocation scheme that ***assigns*** bandwidth (in the broad sense, not necessarily just the frequency-band sense) to slave terminals in a master-slave system. To be sure, Yuki's bandwidth-allocation scheme requires a master or similar terminal to ***assign*** slots in a transmission frame to one or more of the slaves. Appx3812 (13:1-5). While that approach may be fine in Yuki's architecture (a point-to-multipoint, master-slave architecture), that approach is antithetical to Husbands's peer-to-peer architecture, in which there is no master or central controller and in which any terminal is free to initiate communication to other terminals using the entire channel as it wishes rather than when, or as much as, or in the manner it is assigned. Application of Yuki's assignment-based bandwidth allocation in a network like Husbands's is like saying it would be obvious to put wings on fish

because flying is faster than swimming. This incongruity, which is not just a mere physical incompatibility, manifests itself under two long-standing legal principles, as explained below. These are two of many doctrines by which an invention is not obvious notwithstanding what might otherwise appear to be an articulable motivation to combine references. Other examples include teaching away, objective indicia of non-obviousness, non-analogous art, and lack of reasonable expectation of success.

### a. The Combination Would Require a Substantial Reconstruction and Change the Principles of Operation of Husbands.

A modification that would require a substantial reconstruction of a reference or change the principles of operation of a reference is not obvious. *Ratti*, 270 F.2d at 813. That is true as a matter of law notwithstanding what otherwise might appear to be a reasonable motivation to combine. Both this Court and the Board have long applied this principle. *See, e.g., Plas-Pak Indus., Inc. v. Sulzer Mixpac AG*, 600 F. App'x 755, 757-59 (Fed. Cir. 2015) (non-precedential) (applying *Ratti* to affirm Board decision that claims had not been proven obvious); *Samsung Elecs. Co. v. Mojo Mobility Inc.*, IPR2023-01091,

Paper 11 at 34-36 (PTAB Jan. 8, 2024) (applying *Ratti* and *Gordon* to deny institution of IPR petition); *Netflix Inc. v. DivX, LLC*, IPR2020-00052, Paper 82 at 38-39 (PTAB Apr. 22, 2021) (same); *Intuitive Surgical, Inc. v. Ethicon Endo-Surgery, Inc.*, IPR2018-00938, Paper 8 at 29-31 (PTAB Dec. 4, 2018) (applying *Ratti* to deny institution of IPR petition); *ReShape Med. LLC v. Fufillium, Inc.*, IPR2018-00958, Paper 26 at 18 (PTAB Nov. 6, 2018) (same); *R.J. Reynolds Vapor Co. v. Fontem Holdings 1 B.V.*, IPR2018-00630, Paper 9 at 12-14 (PTAB Aug. 29, 2018) (same); *Microsoft Corp. v. Koninklijke Philips N.V.*, IPR2018-00185, Paper 7 at 15 (PTAB May 22, 2018) (same). In fact, *Ratti* has long been prominently cited in the Office's Manual of Patent Examining Procedure (MPEP) for this point. *See* MPEP § 2143.01-VI at 2100-299 (Rev. 07.2022 Feb. 2023) ("The proposed modification cannot change the principle of operation of a reference[.]" (capitalization altered)).

In this case, Husbands would need to be substantially redesigned to have a master or central controller to assign bandwidth allocations to all the other slaved or controlled terminals, which would also have to be substantially redesigned to communicate responsive to the master or central bandwidth allocations. That

would fundamentally change the principle of the access protocol of Husbands from free and egalitarian to authoritarian.

The Office does not dispute that incorporating Yuki into Husbands would require conversion of Husbands's peer-to-peer system to a master-slave system. Nor does the Office dispute the magnitude or significance of that change. Instead, the Office attempts to recast this argument as one about bodily incorporation or physical incompatibility. That is not correct, as explained below.

### b. The Combination Would Render Husbands Inoperable for its Intended Purpose.

A modification that renders a reference inoperable for its intended purpose is not obvious. *Gordon*, 733 F.2d at 902. That is true as a matter of law notwithstanding what otherwise might appear to be a reasonable motivation to combine. Both this Court and the Board have long applied this principle. *See, e.g., In re Fritch*, 972 F.2d 1260, 1265-66 n. 12 (Fed. Cir. 1992); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1354 (Fed. Cir. 2001) (citing *Gordon* for proposition that "inoperable modification teaches away"); *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017) ("Obviousness may be defeated if the

prior art indicates that the invention would not have worked for its intended purpose or otherwise teaches away from the invention."); *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016) ("We find no error in the Board's rejection of TriVascular's argument that it would have been obvious to substitute the recessed barbs of Samuels '851 with the protuberances of Todd, since TriVascular's proposed substitution would destroy the basic objective of the barbs, which is to penetrate surrounding tissue."); *Tri-Arc LLC v. Safe Rack LLC*, IPR2020-01566, Paper 12 at 26 (PTAB Mar. 25, 2021) (applying *Gordon* to deny institution of IPR petition); *Victoria's Secret Stores LLC v. Andra Group, LP*, IPR2020-00853, Paper 12 at 28 (PTAB Oct. 22, 2020) (same); *Keurig Green Mt., Inc. v. Touch Coffee & Beverages, LLC*, IPR2016-01395, Paper 18 at 13-14 (PTAB Jan. 4, 2017) (same); *Gen'l Plastic Indus. Co. v. Canon Inc.*, IPR2015-01954, Paper 9 at 25-26 (PTAB Mar. 9, 2016) (same); *MasterImage 3D, Inc. v. RealD Inc.*, IPR2015-00036 at 18-20 (PTAB Apr. 22, 2015) (same); *Norman Int'l, Inc. v. Hunter Douglas Inc.*, IPR2014-00276, Paper 11 at 12-13 (PTAB June 20, 2014) (same). *3Shape Med. A/S v. Sirona Dental Sys. GmbH*, IPR2016-00481, Paper 40 at 33-34 (PTAB June 21, 2017) (applying *Gordon* to find obviousness challenges failed); *Wangs Alliance Corp. v. Koninklijke Philips N.V.*, IPR2015-01290, Paper

63 at 25 (PTAB Nov. 23, 2016) (same).  Like *Ratti*, *Gordon* has also long been highlighted by the Office in its MPEP.  *See* MPEP § 2143.01-V at 2100-298 (Rev. 07.2022 Feb. 2023) ("The proposed modification cannot render the prior art unsatisfactory for its intended purpose[.]" (capitalization altered)).

In this case, applying Yuki's assignment-based bandwidth-allocation scheme to Husbands would render all terminals but one (the master or central controller) unable to use the whole channel on its own initiative.  The Office does not dispute that.  Rather, the Office responds to this argument by mischaracterizing it as being based on bodily incorporation or physical compatibility.  That is not so.

### 3.    This is Not a Case About Bodily Incorporation.

The Office tries to cast the Soto brothers' arguments above in terms of bodily incorporation.  That is not correct.  The Soto brothers have never argued that, for example, Yuki's plugs would not fit in Husband's ports or that the voltages and currents in Yuki are different from those in Husbands.  The discussion has instead always been about protocols and types of network architectures, both of which are *conceptual* ideas.  Some protocols simply cannot

be used in some network architectures. Compatibility in this sense is different from bodily incorporation. And, in this case, Yuki's bandwidth-allocation master-slave protocol is simply not operable in Husband's peer-to-peer (listen before talk) network architecture as is.

There has always been a point in the law at which the technical challenges of incorporating the concepts of one reference into another reference are so vast that a substantial reconstruction is required, a principle of operation must be changed, or a reference becomes inoperable for its intended purpose. In such a case, the combination cannot be considered legally obvious. That is the case here.

### 4. The Cases Cited by the Office are Distinguishable.

The Office relies on *In re Etter*, 756 F.2d 852 (Fed. Cir. 1985) to allege that "[t]he obviousness inquiry asks 'whether the claimed inventions are rendered obvious by the teachings of the prior art as a whole.'" Appellee Br. at 18 (citing *Id.* at 859. The Soto brothers agree. In fact, this principle supports the Soto brothers in this case for at least two reasons.

First, as noted above, the prior art as a whole is not strictly limited to just Yuki's determination that its bandwidth-allocation scheme is superior to

CSMA/CD in Yuki's point-to-multipoint, master-slave access network architecture, as the Office's oversimplified analysis assumes. The prior art as a whole also includes the highly salient facts that Husbands employs a peer-to-peer local area network architecture that eschews the fixed assignment of bandwidth allocations that Yuki imposes.

Second, digging deeper, the cited passage of *Etter* in turn relies on *Orthopedic Equipment Co., Inc. v. United States*, 702 F. 2d 1005, 1012 (Fed. Cir. 1983), a case that further supports the Soto brothers' position. The Office continues that "the relevant determination is whether there was a motivation to combine the teachings of the references, and not the specific structures shown in the references themselves." Appellee Br. at 18. However, the cited support from *Orthopedic Equipment* cautions against the Office's approach:

> It is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Monday morning quarterbacking is quite improper when resolving the question of nonobviousness in a court of law."

*Orthopedic Equipment*, 702 F. 2d at 1012. Navigating "the maze" with the claims as a guide is exactly what the Board did and the Office now attempts to defend.

When faced with a decision on whether to incorporate teachings that require a master-slave system into a peer-to-peer system, the Board ignored that requirement. When faced with a decision to incorporate teachings that eliminate an express feature of Husbands, the Board ignored that feature. The Board believed that it could do so because the claims do not recite that requirement or feature. But selective ignoring salient teachings from the prior-art references is "Monday morning quarterbacking" the prior art based on the applicant's claims.

The Office cites several cases, including *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214 (Fed. Cir. 2016), *In re Mouttet*, 686 F.3d 1322 (Fed. Cir. 2012), *In re Keller*, 642 F.2d 413 (CCPA 1981), and *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373 (Fed. Cir. 2016), for the proposition that obviousness does not require bodily incorporation. *See* Appellee Br. at 18. However, as explained above, the Soto brothers' contentions are not correctly characterized as being based on bodily incorporation. Furthermore, the cited cases do not support a conclusion of obviousness in this case.

*ClassCo* explains that "*KSR* does not require that a combination only unite old elements without changing their respective function." 838 F.3d at 1219.

"[T]he ordinary artisan recognizes 'that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.'" *Id.* (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007)).  But, in this case, the Board forced the puzzle pieces together.  Specifically, the Board forced master-slave teachings into a peer-to-peer system.  *ClassCo* does not condone this approach.  Neither does *KSR*.  *ClassCo*, in particular, does not condone combining references in such a way that eliminates features of a reference.  Yet, the proposed modification of Husbands in view of Yuki in this case would not just "chang[e a] function" of Husbands's terminals; it would destroy their ability to initiate communications freely on an entire shared channel.

The Office relies on *Mouttet* to argue that "Yuki's bandwidth allocation protocol, as disclosed, could be incorporated into the specific optical LAN disclosed in Husbands."  Appellee Br. at 18.  *Mouttet* focused on physical substitution and the lack of a change in the principle of operation.  The court found that "the Board's determination that the difference in the circuitry—electrical versus optical—does not affect the overall principle of operation of a

programmable arithmetic processor was supported by substantial evidence." 686 F.3d at 1332. Here, the principle of operation would change if Husbands were modified to use Yuki's bandwidth-allocation scheme. That is not just a physical change; that fundamentally changes the way that the terminals interact.

The Office also relies on *Keller*. *See* Appellee Br. at 18. However, the prior-art references in *Keller* used different types of circuits (analog and digital) to perform the same function, and it was concluded that they were interchangeable:

> Both Keller and Berkovits disclose heart stimulators that use R-C type timing circuits. Walsh teaches the use of digital type timing circuits in place of R-C type timing circuits in conventional heart stimulators. Therefore, the question is whether it would have been obvious to one of ordinary skill in the art, working with the Keller and the Berkovits and the Walsh references before him, to do what the inventors herein have done, that is, to use a digital timing circuit in a cardiac pacer.

*Keller*, 642 F.2d at 425. Here, however, the incorporation of Yuki's bandwidth-allocation scheme in Husbands results in a new function, one that destroys an existing, desirable function. This is not a case of interchangeable parts performing the same function, as in *Keller*.

In *Allied Erecting*, the issue was "whether it would have been obvious to modify Caterpillar to make both blades movable as taught by Ogawa, while retaining Caterpillar's quick change functionality." 825 F.3d at 1380. The Court found that the "design allows for a greater degree of movement between the jaws, without impacting the quick change functionality (*i.e.*, the ability to mount and disassemble the jaw in a simple manner) provided by the holding fixtures via side walls 13a." *Id.* at 1381. The modification "may impede the quick change functionality," but there was no evidence that the modification would eliminate the functionality entirely. *Id.* Here, the proposed modification to Husbands would entirely eliminate the terminals' ability to freely use the entire channel.

The Office cites *In re Yamamoto* to argue that the Court rejected the argument that "the combination of two references would not have been obvious because it would render one device 'inoperable.'" Appellee Br. at 19. However, *Yamamoto* does not actually condone inoperable combinations. That would be contrary to long-standing cases like *Gordon*. Instead, the Court in *Yamamoto* merely recognized that the appellant in that case made an inoperability argument, and then the Court merely made the unremarkable statement that "a

claim may have been obvious in view of a combination of references even if the features of one reference cannot be substituted physically into the structure of the other references." *Yamamoto*, 740 F.2d at 1573. Indeed, the cases cited for support by *Yamamoto* focus on physical combinability, not on a device being inoperable. *See In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983) ("What appellants overlook is that it is not necessary that the inventions of the references be physically combinable to render obvious the invention under review."); *Orthopedic Equipment*, 702 F.2d at 1013 ("Claims may be obvious in view of a combination of references, even if the features of one reference cannot be substituted physically into the structure of the other reference."). Of course, as noted above, the law has long recognized that a combination that renders a reference inoperable is not obvious.

The Office cites *Intel Corp. v. PACT XPP Schweiz AG*, No. 2022-1038, 2023 WL 2198649 (Fed. Cir. 2023) (nonprecedential) as another case regarding bodily incorporation. *See* Appellee Br. at 19. Significantly, however, the Court recognized that "evidence that the teachings and concepts of the prior art were (either actually or apparently) ***incompatible*** such that a skilled artisan would not

have reasonably expected to succeed in combining those teachings *is relevant to the obviousness analysis*." *Id.* at *3 (emphases added). So it is here. The incompatibilities between the teachings and concepts of Husbands and Yuki are relevant to the obviousness analysis. In fact, they are dispositive, as explained above.

The Office alleges that *Elbrus Int'l Ltd. v. Samsung Elecs. Co.*, 738 F. App'x 694 (Fed. Cir. 2018) (nonprecedential) rejected an argument that "combining two references 'would lead to an inoperable circuit absent significant additional design work.'" Appellee Br. at 19 (quoting *Elbrus*, 738 F. App'x at 698). However, the Office fails to note the reason that argument was rejected:

> However, the Board rejected Elbrus's argument that combining Sukegawa and Lu would lead to an unworkable circuit. Instead, the Board credited Samsung's expert's testimony that only "simple adjustments" were necessary to ensure that "the circuit worked and didn't fail." As discussed below, substantial evidence supports the Board's conclusion. Inoperability therefore is not a basis for finding that Sukegawa teaches away from applying Lu to obtain the claimed invention.

*Elbrus*, 738 F. App'x at 698 n. 1 (citations omitted). As can be seen, inoperability was a valid concern, and the obviousness conclusion was affirmed because only

"simple adjustments" were needed to make the circuit operable. In the present case, there is no evidence that any adjustment could restore the eliminated features of Husbands. And, there is no evidence that a "simple adjustment" is all that is needed to convert Husbands to a master-slave system.

The Office characterizes *In re Chevalier*, 500 F. App'x 932 (Fed. Cir. 2013) (nonprecedential) as "stating that an argument that the resulting combination of two references 'would be inoperable' misapprehends the obviousness inquiry." Appellee Br. at 19-20 (quoting *Chevalier*, 500 F. App'x at 934). However, the appellant in *Chevalier* admitted that "the deflectors of Kwak and Howk are 'recognized equivalents performing the same function of converting axial flow to radial flow.'" *Chevalier*, 500 F. App'x at 934. Here, Husbands's peer-to-peer network is not a recognized equivalent to the Yuki's master-slave network. Nor is CSMA/CD a recognized equivalent to any of Yuki's bandwidth-allocation protocols. The latter are assignment-based, whereas the former is assignment-less.

### 5. The Office's Attempt to Create a New "Not Commensurate With the Claims" Doctrine Should be Rejected.

The Office defends the Board's position that "the technical details that form the bases of Soto's arguments are not found in the claim language" was a basis to disregard the Soto brothers' arguments regarding the combination of Husbands and Yuki. Appellee Br. at 21. That position is wrong for many reasons.

First, the Office's position is contrary to the principle that an obviousness analysis must consider the prior art "as a whole" and, in particular, each reference "as a whole." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1166 (Fed. Cir. 2006); *In re Enhanced Sec. Research., LLC*, 739 F.3d 1347, 1355 (Fed. Cir. 2014). The Office's position eschews this as-a-whole analysis in favor of blinders that disregard teachings of the references that do not trace back to some part of the claim at issue. That is wrong.

Second, the Office's position regarding what arguments must be "commensurate in scope with the claims" misunderstands the obviousness inquiry. An obviousness analysis involves assessing (1) whether one or more prior-art references teach all the limitations recited in a claim and (2) whether one skilled in the art would have had a rationale to combine the necessary

references' teachings so as to result in the claimed subject matter. The scope of the claim is certainly relevant to part (1). The scope of the claim might also be relevant to *how* the references' teachings are combined. But the question in part (2) – *why* one skilled in the art would have combined the references' teachings – is a question that does not and should not turn on what the claims say. Instead, that question, if it is to be answered without the taint of hindsight, must necessarily turn on what the references teach (and possibly other knowledge known to the skilled artisan as well as common sense and ordinary creativity). The claims play a central role in the obviousness analysis overall, but not in the specific rationale sub-issue. The Court should take this opportunity to clarify this point, else what the Board said and did in this case could become a dangerous precedent.

An example illustrates this point. Consider, for example, a claim drawn to an invention comprising A and B. Assume a first reference discloses A and states that C should never be used. Assume a second reference discloses B and requires C. The Office's interpretation would require disregarding the references' teachings regarding C because C does not appear in the claim at issue. However,

that is not what one skilled in the art would do. A skilled artisan, exercising common sense, would consider the prior art as a whole and evaluate how C is treated in both references.

Third, the Office's position regarding what arguments must be "commensurate in scope with the claims" is contrary to guidance from the Supreme Court. The Supreme Court has cautioned against rigid rules: "Rigid preventative rules that deny factfinders recourse to common sense, however, are neither necessary under our case law nor consistent with it." *KSR*, 550 U.S. at 420. Categorically disregarding arguments based on technical details allegedly not recited in the claims at issue is such a rigid preventative rule.

The Supreme Court also explained that "[t]he first error of the Court of Appeals in this case was to foreclose this reasoning by holding that courts and patent examiners should look only to the problem the patentee was trying to solve." *Id.* The Supreme Court also explained that "[t]he second error of the Court of Appeals lay in its assumption that a person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem." *Id.* The Office is similarly attempting to limit the inquiry to

only the applicant's solution, *i.e.*, the claims, and limit the portions of the prior art based on the claims.

The inquiry should not be as rigid. The prior art should be considered as a whole. Substantial-evidence review must examine of the "record as a whole [including] evidence that both justifies and detracts from an agency's decision." *Applications in Internet Time*, 897 F.3d at 1356; *St. Jude Med.*, 977 F.3d at 1238).

The Office cites *Axonics, Inc. v. Medtronics, Inc.*, 73 F.4th 950 (Fed. Cir. 2023) for the statement that "[t]he obviousness inquiry does not focus on 'whether a relevant artisan would combine a first reference's feature with a second reference's feature to meet requirements of the first reference that are not requirements of the claims at issue." Appellee Br. at 21 (quoting *Axonics* at 957. ). That statement should not be stretched to support the Office's position.

Whatever that statement might mean, the *Axonics* case does not support the Board's decision in this case. In that case, this Court reversed a Board decision that a claim had not been shown to be obvious. *Id.* at 952. The claim at issue was directed at "an implantable medical lead" and required, *inter alia*, "a plurality of electrodes" and "a plurality of tine elements." *Id.* at 953. The claim did not

specify the part of the body in which the lead was implanted. *Id.* Nor did the specification, but the specification did disclose an embodiment for stimulating the sacral nerve. *Id.* at 952. The Board held the claim obvious over Young in view of Gerber. Young disclosed a multi-tine implantable lead intended for use at the trigeminal nerve. *Id.* at 953-54. Young's lead had a single electrode but stated that a multi-electrode version could be better. *Id.* Gerber disclosed a multi-electrode implantable lead for use to stimulate the sacral nerve. *Id.* at 954.

The issue was motivation to combine the teachings of Young and Gerber. The Board agreed with the patent owner's argument that an ordinarily skilled artisan would not have been motivated to add multiple electrodes to Young's lead because "such an arrangement would not be feasible in the trigeminal nerve region" because of "the space constraints of [that] region." *Id.* at 956. This Court disagreed, noting that the claim at issue was not limited to any particular body region. *See id.* at 957-58. Thus, the fact that the teachings of Young and Gerber suggested a multi-electrode, multi-time implantable medical lead within the scope of the claims (*i.e.*, anywhere in the body, like the trigeminal nerve) was dispositive. *See id.* In fact, it is clear from the Court's reasoning that the claims

could be held obvious based on Young alone (*i.e.*, a single-reference obviousness case). And, unlike this case, there was no issue whether the combined teachings of Young and Gerber would require a substantial reconstruction of Young or render it inoperable for its intended purpose (stimulating the sacral nerve).

This case differs fundamentally from *Axonics* in that the Soto brothers' claims are limited to an optical LAN. Yet, applying Yuki's bandwidth-allocation protocols to Husbands would also transform Husbands's LAN into a master-slave, point-to-multipoint system. That would "require a substantial reconstruction and redesign of" Husbands's architecture, as explained above. It would also render Husbands "inoperable for its intended purpose," as explained above. For example, with Yuki's bandwidth-allocation protocols in place the terminals in Husbands would no longer be able to freely "initiate communications to other terminals" or communicate directly with each other using the channel's entire bandwidth. Appx3712 (1:7-8, 2:36-37). In short, the modification is so extreme that Husbands's network of terminals would no longer be a LAN – a requirement of the Soto brothers' claims. *Axonics* cannot be stretched to overrule *Ratti* and

*Gordon* and their decades-old progenies, yet that is essentially what the Office asks for in this case.

Moreover, the cases cited in *Axonics* support the nonobviousness of the Soto brothers' claims. The relevant passage of *Axonics* cites, *inter alia*, *Allied Erecting & Dismantling*; *Yamamoto*; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007); and *In re Urbanski*, 809 F.3d 1237 (Fed. Cir. 2016). *See Axonics*, 73 F.4th at 957. In each case, a motivation to combine references was upheld but in no case was the motivation tantamount to eliminating a claimed limitation. Moreover, *Allied Erecting & Dismantling* and *Yamamoto* are distinguishable for reasons explained above.

*Axonics* cites *Pfizer* merely for the unremarkable proposition that "the inquiry is whether a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention." *Axonics*, 73 F. 4th at 957 (quotation marks and citations omitted).

*Urbanski* asked whether a combination would have rendered a prior-art apparatus inoperable for its intended purpose. *In re Urbanski*, 809 F.3d 1237, 1243-1244 (Fed. Cir. 2016). However, inoperability was not found on the facts

in that case. *Id.* at 1244 ("Nothing in the prior art teaches that the proposed modification would have resulted in an 'inoperable' process or a dietary fiber product with undesirable properties."). That is not the case here.

### 6. Relevant Technical Details are Found in the Claim Language.

The Office alleges that the Soto brothers "[focused] on the technical details of Husbands['s] and Yuki's system that are not recited in representative claim 1." Appellee Br. at 21. This is incorrect.

First, the Examiner needed to use Yuki to reach the claim limitations missing from Husbands. *See* Appellant Br. at 58-59. Necessarily, that includes Yuki's master-slave system. *Id.* at 48-49. There is no disclosure that Yuki's protocol could be used in a peer-to-peer system of Husbands; Yuki's protocol requires a master-slave relationship. *Id.* at 46-47. The only disclosure of a LAN, on which the Office relies heavily, recites "a master unit and a plurality of slave units[.]" Appx3806 (1:16-20). The combination requires a master-slave system to allegedly reach the claim limitations. Thus, arguments about master-slave systems are based on the claim limitations as shown by the prior art used to reject the exact claim language.

Moreover, claim 1 recites that "the downstream optical signal includes downstream control and downstream data information and wherein the downstream control information includes at least one upstream bandwidth allocation for the LAN client . . . and transmitting an upstream optical signal through the optical port of the LAN client on an upstream wavelength responsive to the at least one upstream bandwidth allocation." The arguments in §§ V-B and V-C of the Appellant Brief with respect to master-slave and peer-to-peer systems relate to those claim limitations. In the claims, the LAN client receives at least one upstream bandwidth allocation and transmits an upstream optical signal in response to the upstream bandwidth allocation.

That the terms "master" or "slave" are not expressly used does not remove those concepts from the claims. In claim 1, the LAN client receives instructions on the bandwidth allocation and uses those instructions to communicate. The LAN client is told how it can communicate upstream. A slave station is "the station that (a) is selected and controlled by a master station and (b) usually can only call, or be called by, a master station." Appellant Br. at 7 (citing Appx4960). Moreover, the Office recognizes that concepts of master and slave may take

different forms as the terminology is being changed. *See* Appellee Br. at 9 n. 3.

That the LAN client was not labeled as a "slave" does not remove the requirement

that the LAN client "communicates user data upstream responsive to an upstream

bandwidth allocation," as recited in claim 1.

Accordingly, arguments related to the difference between a master-slave

system and a peer-to-peer system are based on limitations within the claims.

### B.    The Board's Full Rationale Lacks Evidentiary Support and is Riddled With Errors.

#### 1.    Yuki's Disclosure is Not for a LAN.

Yuki is not directed towards an optical LAN.  The sole mention of an

optical LAN in Yuki is one fleeting mention of an optical LAN in its background.

Appx3806 (1:16-23).  That one mention of a LAN in the background is not a

disclosure that Yuki's teachings are in or for an LAN.  That one mention does not

rise to the level of a scintilla of supporting evidence.  More specifically, the

disclosure of Yuki's protocol relied on in the rejection is not directed towards an

optical LAN.  For example, the Board relies on Yuki's Figure 1.  *See* Appx0011.

However, Yuki's Figure 1 depicts an optical access network, not a LAN.  *See*

Appx3808 (5:58-60); Appx3811 (11:48-59) (describing Figure 1 as a "point-to-

multipoint communication system . . . configured as an optical access network"). Yuki never describes Figure 1 as a LAN.

Yet, the Board, relying on Yuki's Figure 1, did base its decision on Yuki being applied to an optical LAN. *See* Appx0011-0012. In fact, the Office admits that both the Board and the Examiner treated both references (Husbands and Yuki) as "directed to an optical LAN." Appellee Br. at 30, 31. That is wrong with respect to Yuki. All relied-on portions of Yuki, including Figure 1, concern an access network, not a LAN. In fact, the one mention of a LAN in Yuki (1:16-23 on Appx3806) makes clear that access networks and LANs are different.

If Yuki were directed towards an optical LAN, why did the Examiner rely on Husbands at all? The Examiner withdrew earlier rejections that were based on access networks like Yuki's (because the claims require an optical LAN). The Examiner changed the rejection to rely on Husbands because Husbands discloses an optical LAN. *See* Appellant Br. at 17-18 (summarizing prosecution history).

Finally, it is not disputed that Yuki's bandwidth-allocation teachings are limited to point-to-multipoint, master-slave networks. Even if there are some LANs that are point-to-multipoint, master-slave networks, such LANs are not

peer-to-peer LANs as taught in Husbands, and the Husbands-Yuki combination is problematic even if both are interpreted as directed at LANs. In that case – in which the category "LAN" is so broad that it includes such diverse network types – not all LANs are interchangeable, and one skilled in the art would attribute little to no significance to the fact that both Husbands and Yuki are directed at "LANs." That would be insufficient similarity to support finding this particular combination obvious.

### 2. The Board Bungled its Analysis of CSMA/CD in the References.

The Office admits that the Board erred when it said that "Husbands' [sic] access protocol [is] directed to overcoming problems with CSMA/CD." Appellee Br. at 26-27 (quoting Appx0015). The Office contends this was a harmless error. Appellee Br. at 27. The Office also retreats to what the Examiner, not the Board, said about Husbands and CSMA/CD. *Id.* at 27-29. But it is the Board's decision, not the Examiner's, that this Court reviews on appeal. And the Board's decision was based in part on incorrect characterizations of Husbands, the primary reference. Overall, there is a pattern of failing to understand the references

individually and how their teachings are in tension.  As a result, the Board's obviousness conclusion was unsupported and legally erroneous.

## III.    CONCLUSION

For the foregoing reasons, the Board's decision on appeal affirming the Examiner's rejection of claims 1-24 of the '794 Application should be reversed.

Respectfully submitted,

Date: _Feb. 13, 2024_          By: _/s/ Derek Meeker_

Derek Meeker
LAURENCE & PHILLIPS IP LAW
1050 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
Phone:  360-606-8922
Fax:  202-558-6181
dmeeker@lpiplaw.com

_Counsel for Appellants_

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL CFR
## OF APPELLATE PROCEDURE 32(a)(7)
## & FEDERAL CIRCUIT RULE 32

This brief has a proportionally spaced 14-point typeface, and contains 6,073 words, based on the "Word Count" feature of Microsoft Word for Office 365 MSO®. This word count includes footnotes and endnotes but does not include the parts excluded by Federal Rule of Appellate Procedure 32(f) or Federal Circuit Rule 32(b)(2).

Date: _Feb. 13, 2024_          _/s/ Derek Meeker_

Derek Meeker

_Counsel for Appellants_